We'll hear Spiegler v. Home Depot. Good morning. My name is Matthew Zevin. I represent the plaintiffs and appellants. I'd also like to introduce my co-counsel, Michael Braun, at the counsel table. Good morning. For purposes of today's argument, I'd like to focus the court's attention on three things. Counsel, I am mystified here. I look at the contract, and it's a fixed-fee contract. It's not a materials and labor, cost plus, or something like that. And I can't see how it matters how Home Depot arrives at it. Respectfully, Your Honor, I would disagree that it's a fixed-price contract, and I'll get to why that is. Let's look at it together. I don't think it falls into any of those categories. Let's look at it together. We've got a copy here. Here it is at ER 73. It's ER 73 and 74. Well, there's multiple pages to the contract. Yep. ER 73. It says the total amount of the sale is $11,571. Right. And then what does it say that the subject matter of the transaction is? It says... Tell me what to read. It says... Let me tell you what's on my mind and make sure you understand. Sure. Lawyers sometimes charge flat fee. Sometimes they bill by the hour. If a lawyer says, I'll handle your drunk-driving case for $5,000, that's the deal. Client agrees to $5,000, it's fine. If the client discovers that the lawyer has systematically overestimated how long drunk-driving cases take, and had he applied his usual hourly rate to how long they usually take, it would have only cost $4,000. It just doesn't matter. The lawyer has not defrauded the client. However, if the lawyer says, my fee is $250 an hour, and then he pads his bill and charges for some hours he didn't spend, that lawyer can go to jail and that client can get him disciplined, maybe get his ticket taken away. And it seems to me that Home Depot is like the lawyer who says, I'll do your case for $5,000 an hour, or for $5,000, and your whole case is based on the idea that it's $250 an hour. The fundamental difference, Your Honor, is that this is not a pure service-based agreement. In the example you gave, the lawyer is providing services for a fixed fee. If you look at the express language of the contract. Okay, show me which language to look at. Two different places. First, on ER 73. Got it. The paragraph above where Ms. Spiegler signed the contract says acceptance and authorization. By signing below, you authorize Home Depot to A, arrange for installation professional to perform installation, and or B, order and arrange for the delivery of special order merchandise, including special order merchandise that may be custom made as specified in this agreement. Right there, that's identifying two separate subject matters of the transaction. If we go further to the next page, which are the general terms and conditions of the contract, and you go down to the fourth paragraph where it says your responsibilities, it says you agree to pay Home Depot for merchandise delivery and or installation according to the terms and conditions of this agreement. Again, it's contemplating and identifying two separate subject matters of the transaction, delivery and order of merchandise and installation, and the two are separable. Now, the contract itself. But in all cases, what was delivered, what was performed was both installation and delivery, was it not? Yes. All right. So why does it matter that it's listed this way? It's a fixed price for both of the components of the contract. Respectfully, that interpretation of the contract has to throw out a very crucial provision of the contract, and that's the return section, which is on the same page of Exhibit 74. But did they ever accept any returns? Because aren't all of these installations measured? Yes. First of all, California law requires the court to give meaning and interpret every word and provision in the contract, which was drafted by Home Depot, and it must be interpreted against them. I've looked at all three of these provisions you've pointed us to, and I don't understand how they undermine the proposition that it's a fixed price contract. Because in essence, there is no way you could ever have a return, a refund of a purchase price in a fixed price contract. Home Depot goes at great lengths in their briefs to explain what a fixed price contract means. Under a fixed price contract. Custom stuff is non-returnable. Unless incorrectly ordered by Home Depot. So it's saying that you can return the custom merchandise if it's incorrectly ordered. Right. So if the cabinets come and they're too big to fit in the space, the customer is not going to be charged for cabinets that are too big. They're going to have to remeasure them and reorder the right side. Respectfully, that's not what it says. It says you can return the cabinets. You can get a refund of the purchase price. Their entire argument throws that language out the window, and the court's not allowed to do that, especially not at a motion to dismiss. Yeah, I don't see that. Let me put it another way. Under a fixed price contract, the contractor assumes all the risk. If they ordered the wrong product, then the contractor has to, in a fixed price contract, the contractor has to get the right materials and put in the correct products. There's no refund. There's no return. There's no discrete purchase price. It just wouldn't happen. The two terms are mutually exclusive. You cannot have returns and refunds in a fixed price contract. It's impossible to reconcile that. I just don't understand that argument. I mean, basically what they're paying Home Depot to do is to reface their cabinets, and that includes both the installation professional's time and a certain amount of materials. And if Home Depot mismeasures the material and it arrives and the installer says it ain't going to fit in the spot that it's got to go in, I read that to say it goes back, new material is ordered that will fit, and the customer doesn't have to pay for the first set of material that arrived that was mismeasured. Respectfully, I don't think that's giving credence and giving meaning to the terms of the contract, and I don't think that's supported by the terms of the contract. First, let's get an understanding of what it means to reface a cabinet. Home Depot is not going in and tearing out the cabinets and installing new cabinets. Refacing means taking off the old doors, hinges, handles, and putting on new doors, handles, and hinges. Home Depot sells these items. You've got to replace a same-size door with a same-size door. Correct. So what happens if they mismeasure and a bigger door gets delivered and the installer says, I can't put that door on this cabinet, it's too big. So under this contract, the consumer is entitled to a refund. It doesn't say Home Depot has to do it right. That's not what it says. But then either the bigger door goes back, or for some odd reason, maybe the consumer says, okay, I'll take it anyway. I always wanted a bigger door on that cabinet. Or they order the right-size door, and then they wait however long it takes for the right-size door to arrive, and then the installer does what the installer does. I'm still failing to understand how you could ever have a return and a refund. If I read this thing the way you're supposed to with contracts of adhesion, contra pro forentum, what they've done here is give the consumer an election. If we deliver doors that are too big and cannot be installed on your cabinets, you have an election. You can get your money back and fire us, or you can hold us to the deal, and for the same $11,571, we'll give you the right stuff and put it on. Okay. I'll accept that proposition. However, they say you can return the product and get a refund if it is incorrectly ordered. They don't define what incorrectly ordered means. Incorrectly ordered could mean the wrong type, the wrong size, or the wrong quantity. And we have alleged that … It would never occur to me that ordering a little more than you need is incorrect. Whenever I do anything in my house, I always get more than I need of rug or tile or wood or carpet or paint or anything, because it's a catastrophe if I run short and can't match. And it's nothing if I spend a few extra bucks on material that just sits in my garage and shed. Well, two things. One, I don't think that's giving credence to the fact that the doors that we're talking about are merchandise. It is a separate unit. It is something that they come and they physically display it and show it to you. It's separate. You can't use a cabinet door unless it's put under your cabinet. True, but it is merchandise that Home Depot, as a retail chain store, sells. Counsel, I don't see this any different than if I took my car into the auto shop and the mechanic looks at it and says, you need a new water pump. And so they order a new water pump, and lo and behold, they ship the wrong size water pump for the car. I'm not going to have to pay for the water pump that's too big to fit in my car, but what I'm paying for is the mechanic to fix the problem, which is the leaky water pump. And that includes materials and it includes the installer's time and effort, and that's a fixed price. The problem here is they're charging you for two water pumps, and then they find that out before they even collect the money from you. How are they charging me for two water pumps? They're quoting the consumer $11,471 in order to replace or refinish Ms. Spiegler's cabinet. But based on the fact that Home Depot is a retail chain store, and you can go there and just buy these products on a per-unit basis if you want. Or you can buy them and say, we take them and you install them for me. Right, and pay them to do it for you, and that's what this contract is. I think any reasonable consumer would still understand that they are paying a per-unit price for these products. I don't see why. Well, one, because... If I want to pay a per-unit price, I can check out with the stuff and put it in my vehicle and ask them, hey, do you have an installer I can get to do all this work? I don't want to do it. And then I can do my own measuring. Exactly. I'm responsible for my own mistakes. Then you're relying on Home Depot to accurately charge you for the quantity of products that you're actually going to use. No. In your hypothetical, Judge Kleinfeld has gone down to the local Home Depot and has said, I want a cabinet door this size and this color with this kind of door handle on it, and here's what Home Depot is going to charge Judge Kleinfeld for the door. And he either pays that price for the cabinet or he doesn't. But then he goes home and he tries to install it himself. Here, the consumer is buying more than just the hardware. They're buying the full service deal. Somebody comes to your home and puts it on the face of the cabinet for you. Right. But the express language of the contract says you're buying two different things. You're buying the merchandise and you're buying the installation service. I don't see where it says that. What express language? It says total amount of sale, $11,571. Right. And by signing below, you authorize Home Depot to A, arrange for installation professional to perform installation, and or B, order and arrange for the delivery of special merchandise. This means I can't tell them you breached the contract because I would never let you into my house. I don't see where the hypo that you gave in your brief, as I recall, maybe you didn't give it but I thought that's what you meant, I can't remember for sure, was you buy two cans of paint and the cashier brings you up for three. And there, if there was some way to do that fraudulently, I guess like a gas station that has the gas pump set to bring up more gas than you actually got, if there was some way to do it, you'd say, hey, wait, you charged me for three cans of paint and I only took two off the shelf. Look here in my cart, I've got two cans. Well, they can't charge you for three because the deal is there's a sticker on the paint can or a barcode and there's a price per can and that's your deal. You're buying so many cans at so much per can. And here I look at the deal and all I can see is the total. Well, again, if you look at the return section, it specifically references a purchase price for incorrectly ordered material. It's not talking about the labor, it's not talking about anything at all. So what you really need for your case then is for us to read the word incorrectly to mean ordering five or ten percent more material than is, strictly speaking, necessary. But that's not, if you take our allegations as true, which must be done. I think that has to be incorrect. Because what you're saying is they come up with this $11,571 by considering cabinetry that would cover the dishwasher and actually you don't need cabinetry that would cover the dishwasher. So the cabinetry they ordered based on that estimate is incorrectly ordered. That's exactly right. They're not charging you for incorrectly ordered material here at all. They're just charging you $11,571. But what does that encompass? I think a reasonable consumer would expect that it is based on the measurements by a sales agent. Let me try another hypothetical on you. I want to have carpet installed in my house. And so I ask the carpet dealer to send somebody out and they measure and they say this is what it's going to cost and it's going to include installation and the carpeting. And at the end of the carpet installation, lo and behold, I got all this extra strips of carpet in funny sizes that are now taking up space in my garage that I have absolutely no use for. I know in that instance that I paid for more carpet than what I actually needed. But I at least got to keep the remnants of the carpet that the installers didn't need. In this instance, it seems to me that what Home Depot has done is they've come in, they've quoted you a price for what it's going to cost to reface your kitchen cabinets, and they've measured it twice in order to figure out exactly how much material they're going to need. But the difference here is that if they measured too much, then I eat, I pay more than I maybe should have. If they measure too little, then the loss is on them, but the contract price never changes because that's what I agreed to pay to have that work done. Here's what happens. In a normal course of business, if you just had the sales agent come and measure and say, okay, you need 50 linear feet of cabinet space, they would come and deliver 50 linear feet and then find out, oh, we've got two extra feet here. Pursuant to this returns clause, the customer would be able to say, I've got two extra feet here, I don't want it, it was incorrectly ordered, I want to return it for a refund of the purchase price. They would have to say, okay, well, how much was it per linear foot, and give you a refund for those two feet. Maybe not. I mean, maybe they would say, okay, we'll take it all back and we'll reorder it, and we'll reorder it at two feet less than what we ordered it the first time. Or they would say to the consumer, okay, if you don't want the extra two feet and we can't install it because we don't have enough space to put it in, here's your money back. Exactly. Here's your money back. But what is the money back? It says the return of the purchase price. They're not going to give you the money back for the entire job. They're going to give you the money back that is attributable. How do we know that? The purchase price, as you point out on page 73 of the excerpt of record, is $11,571. If I'm the consumer, that's what I would expect to be refunded if I want to back out of the deal. Respectfully, I would disagree with that because I think it says total amount of sale, which implies to me a compilation of prices. We're over time, incidentally, so you better wrap up. Okay. I'd just like to finish up with my understanding of how this would work, and I have yet to hear an explanation of how the court can give meaning and application of this returns clause because what would normally happen is in the scenario I gave, the consumer would get two extra feet of cabinet. It looks really simple. It looks like this is custom stuff. You can't return it unless we made a mistake. Right. So if they order too much, you would return it and get a refund. So here what they do is they send in this measure technician before they collect final repayment, and they say, wait a minute, the sales agent estimated too much, calculated too much. Don't order everything that the sales agent said to order. Order a little bit less, and then they order the actual amounts they'd estimate to deliver. Too little. The measurement guy determines that he based the price, and really there is more material required. Doesn't Home Depot eat it? But that's not the situation that we have here. I mean, what we have here is – I thought there was evidence that when that happened, then the commission, it comes out of the commission of the initial salesman, doesn't it? That's irrelevant. As long as the customer doesn't eat it. Yeah, the price never changes. That's not the situation that happened. That's not the fact pattern that we have. We're at a motion to dismiss here. The fact pattern is that they over-measured and priced for too much product. The measure technician came in and said, don't order everything that the sales agent estimated. Only order a little bit less. So what they've done is frustrate the customer's ability to exercise their contractual right under this returns clause. Thank you. And that's implied covenant of good faith and fair dealing. Counsel. Thank you, Judge Kleinfeld. May it please the Court, Robert Gasso on behalf of all the Home Depot and Home Remodeler defendants, I want to start with your first question and your last question. These are fixed price contracts, and the fact that they're fixed price contracts is showed by the fact that there is no adjustment to the price, even when the estimate is in the customer's favor. There is estimate that there is evidence that only a portion of it comes out of the commission, but Home Depot always takes a portion of it as well. I would guide you to the breakdown in the minimum 2% commission that you'll see. I don't know if that matters. It doesn't. Could you explain what the word incorrectly means in the returns clause? It applies to special order merchandise that's either misordered or misdelivered. And in that narrow, narrow category of special order merchandise, you can, under certain circumstances, get a refund. That's the only time it applies. How should we read the word incorrectly? As a matter of law under the Bank of Brazil case. This is a part of the contract. Contract interpretation is a matter of law for the court. You can't take a narrow clause. What does the word mean? The word means that there has been an incorrect mistake that's been made within the context of solely that paragraph. Why isn't it incorrect to order 5% or 10% more? As I understand it, what they do is they measure lineal feet of cabinetry instead of square feet of cabinetry. And that generates a pretty systematic over-order for the areas that the dishwasher and possibly other appliances are in. Your Honor, I don't think there's any record evidence that it's systematic. That is certainly their pleading. I don't think that has to be. I mean, just about everybody's kitchen has some appliances of some sort that take up part of the space where cabinetry would otherwise be. A microwave, a dishwasher, one of those garbage crusher things, something. That's correct, Your Honor. And you can assume that there is a systematic upward bias. But that doesn't change the fact that it's a fixed-price contract. All of the prices that we charge in using our estimates for the material, the price for square foot in the carpeting example, for instance, you can raise that price 10% or you can overestimate by 10% because you don't want to go back and get more carpeting. You know, it doesn't make a difference. There's nothing unfair about charging a fixed price. Now, what does incorrect mean? Incorrect means within this one specific contract clause that there's been an order of special order merchandise. Now, that is a minor, minor subset of all merchandise. Special order merchandise, and you'll see it in the definition there, is one that's been specially altered or tailored or colored or something like that. So instead of off-the-shelf merchandise, you've ordered special order merchandise. And what we're telling them is, look, when you order special order merchandise, we're not going to let you return it ever. So whereas before, maybe you order merchandise and you can bargain and say, well, this is off-the-shelf. Why don't you give me the other off-the-shelf stuff? Well, maybe we'll bargain with you. And damaged hardware fall under that clause as well. Suppose it got damaged in shipment. No, and this is what's critical, and this was in the district court's discussion of this as well, if you look back. This applies only to special order merchandise. So it's special order merchandise that gets damaged. So I guess you're saying you can't return special order merchandise unless it's our mistake. Right, exactly. If you order special order merchandise, we're going to tailor it to your taste. You may have special taste. We may never be able to sell it to anybody else in history. So if you order special order merchandise, you should know that you're going to be more stuck with that than regular merchandise. The only way you're going to be able to get that off your hands, again, in this narrow category of special order merchandise, if it's our mistake. If we make a mistake in ordering or we make a mistake in delivery, of course we'll make it good. But that applies to special order merchandise. And what they're trying to do is take this exceptional situation, which is always going to happen in any contract, and then read the whole contract around that exceptional situation. And tell me exactly why you can't use the word incorrectly, why your adversary can't use the word incorrectly in that paragraph to mean that it's ordered incorrectly if there's more than is necessary. Because the vast majority of merchandise is not special order merchandise. It says, returns, colon, special order. I'm reading at the very top here. This is on the records excerpts, page 74. And I know it's hazy, but if you look in our brief, we reproduce it clearly. Special order merchandise that is custom made, i.e., uniquely altered, color matched, shaped, sized, or otherwise uniquely designed or fitted to accommodate the requirements of a particular space or environment. And then we give some examples. All, you know, interparency, we're staying with the same long sentence here, is non-returnable and its purchase price cannot be refunded unless it's either incorrectly ordered or damaged beyond repair and delivery. That's all one sentence. And then we have a second sentence in that paragraph that says, you know, contact us, we can tell you more about it. But that's all one long sentence that can only be read to apply to special order merchandise that is custom made. And so you can't take this narrow exception of one particular type of merchandise that is custom made and then rewrite the whole entire fixed price contract. Is most of the merchandise custom in the sense that it has to be measured to fit the specific space that it's going to go in? Well, no. Most of the merchandise is not custom made in this sense. So you'll get so much molding or so much, you know, cabinetry. It's just a matter of the quantity. And as they admit on page 30 of their brief, the quantity is defined by the space. It's defined by the job. In your carpeting example, you say, re-carpet my living room. So you don't have to say, I want to buy X amount of square feet for my living room. He comes out there. You're standing in the living room. There's a meeting of minds as to what room in your house is a living room. You say, re-carpet that living room. If you say, re-face the podium here. We don't like the ornamental blue squares. We want a whole different arrangement to the podium. There's a meeting of minds as to what the quantity is. It's not defined numerically, but there's a meeting of minds. However much material that I have to supply, however much labor that I have to supply, I better replace that whole podium. And the fact that I have to supply both labor and materials is inconsequential. There's nothing that public policy says that, you know, fixed price contracts somehow don't apply when you're combining labor and materials. Those are the sorts of situations where you most want a fixed price contract, right? I mean, you don't want, because you're installing it, to have the installer come out, tear up your kitchen, and say, oh, you know, we're going to need some more material here. Remember that $11,571 quote I gave you? We're going to have to bump it up a little. I'm sorry, that was just an estimate subject to later adjustment. That's not good public policy. That's not what the consumer wants. They want fixed price contracts. They want to be able to shop those contracts. They want to be able to rely on those contracts before you tear up their kitchens and start refacings. That's Home Depot's business model, your honors, and that's what we're giving them here. There is no evidence on the face of those contracts, and I want to be clear here. You started this colloquy in exactly the right place. Total amount of sale. Total amount of sale means total amount of sale. It doesn't mean fair estimate. It means total amount of sale. There's no breakdown, your honors, between a merchandise component and an installation component. Total amount of sale. So, of course, we're going to supply the merchandise here. That's what the consumer wants. It wants to look at us to get the job done right. Your honor, there are such a thing as unit price contracts, but this would be the first time, the first case that we have been able to identify under California law where you would ever imply or you would ever find a unit price contract where there were no units of measure specified on the space of the contract and no prices per unit. How can you sell carpeting at so many dollars a square foot when you don't say there's 2,500 square feet at $30 a square foot? That's not what's here. Where the California courts have found unit price contracts, unit pricing, they found it in situations where there was an express unit of measure and an express price. Would an example be our hypothetical of going down to the Home Depot and just buying the materials yourself and doing the installation work yourself? Sure. That would be a unit price contract, would it not? Exactly. That would be a unit price contract. And that would be a unit price contract because you could go to the molding department at Home Depot and I don't know what the units are, but let's say they have big moldings standing up and they say these moldings are going to cost $2 a linear foot. That contract specifies what the unit price is, what the units are, and what the unit price is. And for these purposes, your honor, it's absolutely critical that they conceded below, and this is why we added the supplemental record excerpt, they conceded below on page 193 of 12 that they waived their argument that the price list that they included in Exhibit A to their complaint was included and incorporated into those contracts that they included at Exhibit C in their complaint. They waived that argument below. So there is no argument that on these contracts that they ever knew the pricing. They admit that in their briefs as well, including on page 18 of their reply brief. But they waived the argument that these supposed unit contracts have any units specified or any prices per unit. And it would be, I would submit, your honor, a revolution in the law of California to find a unit price contract where there are no units, where there are no prices per unit, and where there is the clear and unambiguous term, total amount of sale. And unless there are further questions, I'll wrap up. Thank you. Thank you very much, your honor. You went way over time, but I'll give you 30 seconds. Thank you. Very quickly. We allege a systematic practice here where even their own sales agents have admitted, and we quote this in our complaint, they admitted that they go out and over-measure and charge customers for too much product. Isn't the consumer in the position of being able to go out and shop another bid from Costco or whoever else might supply and say, well, Costco will do this for me for $10,600. But this isn't a comparison. That's not the question. The relevant question is not whether or not you could have got a better bid somewhere else. The relevant question is, what is Home Depot's price? They're an established retail chain. They sell these products on a per-unit basis. You would expect. $1,500. And the market will act, if the economists are correct, in keeping the prices low through competition. But that doesn't mean that Home Depot isn't going to make a profit. I would say all that is outside of the pleadings, respectfully. Well, this is basic economic theory. I don't think that's changed. The carpet example you gave is very important because they're in the same situation. If they over-measure, you get to keep the carpet. Here, they go out of their way. You can't come back to the carpet dealer and say, hey, you've got all these funny-shaped pieces of carpet in my garage. I want you to take them back, and I want a refund. But I don't know what the contract says there. I don't know if there's a returns clause. That's not included in their return policy. I don't know if there is a return clause there. Here, there is a specific return clause that the court has to give credence to. It has to give meaning to it under California law. Thank you. Speaker versus Home Depot is submitted.
judges: Trager, Kleinfeld, Tallman